**ALLSTATE INSURANCE COMPANY,**
**as Subrogee of Russell Davis,**
**Plaintiff,**

v.

**HUGH COLE BUILDER, INC.; Hugh**
**Cole Individually and d/b/a Hugh**
**Cole Builder, Inc., Defendants.**

**Civ.A. No. 98–A–1432–N.**

United States District Court,
M.D. Alabama,
Northern Division.

April 12, 2001.

Sterling G. Culpepper, Jr., Balch & Bingham, Montgomery, AL, Mark S. Grotefeld, Brad M. Gordon, Daniel G. Galivan, Grotefeld & Denenberg, LLC, Chicago, IL, for plaintiff.

Micheal S. Jackson, Beers Anderson Jackson Nelson, Hughes & Patty, PC, Montgomery, AL, for Hugh Cole Builder, Inc. and Hugh Cole, individually.

Micheal S. Jackson, Beers Anderson Jackson Nelson, Hughes & Patty, PC, Montgomery, AL, for Hugh Cole Builder, Inc., third-party plaintiff.

## ORDER

ALBRITTON, Chief Judge.

This matter is before the court on a Motion in Limine to Exclude Certain Testimony of Plaintiff's Expert Ralph Boyer (doc. # 81) filed by Defendants Hugh Cole Builder Inc. and Hugh Cole ("Defendants") on March 26, 2001, and Plaintiff's Response filed on April 5, 2001. Defendants request that the court exclude the testimony of Plaintiff Allstate Insurance Company's ("Plaintiff") expert Ralph A. Boyer ("Boyer") with respect to the cause of the fire made the subject of this suit. For the reasons to be stated, Defendants' Motion in Limine is due to be DENIED.

### I. RELEVANT LAW

■ The Federal Rules of Evidence govern the admissibility of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). "Under the federal rules, the trial judge serves a gatekeeping function, making both a 'relevance' and a 'reliability' determination, that is, disallowing expert testimony when it will not be helpful to the trier of fact or when it lacks a reliable foundation." *Rudd v. General Motors Corp.*, 127 F.Supp.2d 1330, 1334

(M.D.Ala.2001) (citing *Daubert*, 509 U.S. at 589, 113 S.Ct. 2786). A trial judge carries out its role as gatekeeper by applying the Federal Rules of Evidence, specifically Rule 702. Rule 702, as amended effective December 1, 2000, provides: [1]

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

■ Under the amended Rule 702, a trial judge has an obligation to screen expert testimony to ensure it stems from, not just a reliable methodology, but also a sufficient factual basis and reliable application of the methodology to the facts. *Rudd*, 127 F.Supp.2d at 1337. The trial judge, however, must still avoid usurping the role of the trier of fact:

> "[The revised rule] is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other.... [T]he rejection of expert testimony is the exception rather than the rule. *Daubert* did not work a seachange over federal evidence law, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.

---

1. The court recognizes that Plaintiff filed its complaint on December 21, 1998, that is prior to December 1, 2000, the effective date of the amended Rule 702. The amended Rule 702, however, governs all proceedings in civil cases pending December 1, 2000, "insofar as just and practicable." Orders of the Supreme Court of the United States Adopting and Amending Rules, Order of April 17, 2000. In the present case, the court finds that it is "just and practicable" to use the amended Rule 702 to judge the admissibility of the testimony challenged by Defendants because both parties base their admissibility arguments on the amended Rule 702 and do not object to its application.

Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

*Id.* (quoting Fed.R.Evid. 702, advisory committee notes, 2000 amendment).

■ As to reliability, *Daubert* suggests several factors to aid federal judges in evaluating whether a particular scientific theory or study is reliable: (1) its empirical testability; (2) whether the theory or study has been published or subjected to peer review; (3) whether the known or potential rate of error is acceptable; and (4) whether the method is generally accepted in the scientific community. 509 U.S. at 592–94, 113 S.Ct. 2786. In *Kumho Tire Company, Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Supreme Court noted that the *Daubert* factors do not constitute a definitive test and "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150, 119 S.Ct. 1167. The court further stated that "[a] trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152, 119 S.Ct. 1167. Consistent with this understanding, the advisory committee notes for Rule 702 explain that the 2000 amendment, while intended as an endorsement of the *Daubert* conception of the trial judge as gatekeeper, was not intended to codify the specific factors mentioned in *Daubert* and instead, recognizes that the factors relevant in determining reliability vary depending on the expert testimony.

■ The proponent of the expert testimony has the burden to establish by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied. *Rudd,* 127 F.Supp.2d at 1334 (citing *Bourjaily v. United States,* 483 U.S. 171, 172–73, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)).

## II. *EXPERT TESTIMONY*

Plaintiff hired Boyer to investigate the fire that occurred at the home of Russell Davis on or about December 22, 1996. Boyer physically inspected the home on December 26, 1996. Based on his inspection of the fire damage, Boyer determined that the fire originated in the area to the right of the fireplace's firebox. (Boyer's Report at 6). Because Defendants do not dispute the origin of the fire, but dispute the cause of the fire, the court will focus on Boyer's testimony concerning the cause of the fire.

The aspects of Boyer's testimony that relate to the cause of the fire (gleaned from his report and his deposition testimony) can be summarized as follows. The Isokern Fireplace in Davis's home had a gas fire log starter with a valve the homeowner turned on and off. (Boyer Dep. at 66, line 19 through 67, line 3). The gas fire starter consisted of a galvanized pipe that ran through the right side of the firebox. (Boyer Dep. at 49, lines 4–6). The galvanized pipe exited the firebox through a hole that was not sealed, and as a result, the pipe could easily slide back and forth through the hole. (Boyer's Report at 6; Boyer Dep. at 51, lines 8–10). Once the galvanized pipe exited the firebox, it formed an L shape up before connecting to a flexible copper pipe.[2] (Boyer Dep. at 46, lines 4–8; 49, lines 9–12). The

---

2. The galvanized and copper pipes where connected by a coupling that was destroyed in the fire, and as a result, Boyer could not determine the type of coupling that was used. (Boyer Dep. at 50, lines 4–5, 21–23).

copper pipe ran from just outside the firebox up a chase to the roof line.

The chase is an area of space around the firebox and continues up and around the chimney. (Boyer Dep. at 65, lines 13–20). The chase was about one foot wide from the right side of the firebox to the outside of the chase. (Boyer Dep. at 65, lines 13 – 20). A wood frame member ran along the outside of the chase up to the roof line. (Boyer Dep. at 54, lines 20–23). The distance from the wood frame member to the firebox was approximately one foot. (Boyer Report at 6).

After examining the fireplace, specifically the area to the right of the firebox, Boyer concluded that the fire was caused by the conduction of heat through the fire starter pipe to the wood framing. (Boyer Dep. at 15, line 22 through 16, line 6). In particular, Boyer theorizes that the pipe slid through the hole in the firebox, touched the wood framing, and conducted heat from the fireplace, thereby igniting the wood framing. (Boyer Dep. at 15, line 22 through 16, line 6). In reaching this conclusion, Boyer reasoned that a small gas leak would not have caused the fire and that although the hole in the right side of the firebox lacked a seal, enough heat could not escape from the firebox to cause the fire. (Boyer's Report at 9).

### III. *DISCUSSION*

■ Defendants assert that Boyer's testimony as to the cause of the fire should be excluded under Rule 702 because his testimony is not based upon sufficient facts or data and is not the product of reliable principles and methods.[3] Because Defendants' arguments concerning the sufficiency of the facts carry over into the applica-

tion of the facts to the methods inquiry, the court will first examine whether the testimony is the product of reliable principles and methods and second, whether the testimony is based upon sufficient facts or data and whether the witness has applied the principles and methods reliably to the facts of the case.

### A. Reliable Principles and Methods

Defendants argue that Boyer's conclusion that a metal pipe may conduct sufficient heat to ignite wood is not based on the product of reliable principles and methods. Defendants assert that this conclusion is unreliable because Boyer did not examine any reference books, did not perform any satisfactory tests, and did not determine the ignition point of wood. An examination of the record, however, reveals that Boyer's conclusion is a product of reliable principles and methods.

Defendants correctly note that, in creating his report in 1997, Boyer did not examine any reference books as to the possibility that heat conducted through metal could ignite wood in contact with the metal. (Boyer Dep. at 23, lines 3–9). Boyer did state that he thought that this principle was contained in reference books, such as the NFPA 921.[4] (Boyer Dep. at 22, lines 10–23). Although Boyer did not initially examine any reference books, Plaintiff asserts in their brief that Boyer will rely upon the NFPA 921 to support his testimony at trial. According to Plaintiff, the NFPA 921, Guide for Fire and Explosion Investigations, 3–2.1 Conduction provides that "[h]eat conducted through a metal wall or along a pipe or metal beam can cause ignition of combustibles in contact

---

3. Defendants do not argue in their Motion in Limine that Boyer lacks the requisite qualifications. Nor do Defendants challenge Boyer's conclusion as to the origin of the fire, i.e. that the fire originated inside the fireplace

frame enclosure just to the right of the firebox.

4. NFPA stands for the National Fire Protection Association.

with the heated metals." Boyer stated that the NFPA 921 is the accepted authority on fire investigation. (Boyer Dep. at 107, line 18 through 108, line 13). Because the court is determining whether Boyer's testimony at trial will be reliable, the court will take into account that Boyer's testimony is supported by the NFPA 921. Based on the NFPA 921, Boyer's theory has been subject to peer review and is generally accepted in the scientific community.

Defendants also assert that the test employed by Boyer to recreate what happened at the Davis house is not the product of proper methods and thus does not support the principle that the thermal conductivity of metal could ignite a fire by touching wood. Boyer attempted to recreate the fire by putting part of a metal pipe in a fireplace in order to determine the temperature of the pipe. (Boyer Dep. at 36, lines 8–15). In the test, Boyer placed approximately one to two feet of the pipe in the fire and about two feet of the pipe out of the fire. (Boyer Dep. at 38, line 18 through 39, line 6). The pipe used in the test appeared to be of the same composition of the pipe from the Davis residence, but Boyer did not perform any analysis to determine if the pipes were composed of the same material. (Boyer Dep. at 38, lines 11–17). After the pipe was in the fireplace for ten minutes, Boyer attempted to touch the end of the pipe furthest away from the fire, but could not because the pipe was too hot to touch. (Boyer Dep. at 39, lines 7–12). Boyer did not measure the surface temperature of the pipe and did not have a piece of wood touching the pipe to see if the wood would ignite. (Boyer Dep. at 39, lines 14–19).

Although the court finds that this test supports Boyer's testimony that metal may conduct heat, the court agrees with Defen-dants that this test does not provide support for Boyer's theory that a metal pipe may conduct sufficient heat to ignite wood. As Defendants point out, Boyer did not measure the surface temperature of the pipe to determine whether the temperature rose to a level that could ignite wood. In addition, Boyer did not even test to see if the surface temperature of the pipe could ignite wood by placing a piece of wood in contact with the pipe.

Defendants also argue that Boyer's principle is suspect because Boyer stated that he did not have to determine the ignition temperature of the wood framing to know that it is scientifically possible that a heated metal pipe may ignite wood. (Boyer Dep. at 45, lines 7–16). Defendants correctly note that Boyer did state that he did not have to know the ignition temperature of wood "[b]ecause there was nothing else that could produce the heat to cause the fire." (Boyer Dep. at 45, lines 13–16). Boyer, however, did explain his rationale. He stated that he did not have to know the exact ignition temperature of the wood because the surface temperature of the pipe could easily reach the ignition temperature of wood.[5] (Boyer Dep. at 44, line 19 through 45, line 4). He also explained that he knew that heat conducted through a pipe could ignite wood because in the past, many fires have been caused by pipes touching wood. (Boyer Dep. at 45, lines 17–18).

The record indicates that Boyer reached his conclusion by relying on his education and experience, (Boyer Dep. at 20, line 20 through 21, line 15), and by discussing the issue of conductivity with the president of the company where Boyer is employed, (Boyer Dep. at 23, lines 7–18). The Montgomery Fire Investigator who investigated

---

5. The court recognizes that Boyer stated that the ignition temperature of pine is around 425 degrees, (Boyer Dep. at 34, lines 13–15), and that the temperature in the firebox could vary from 1200 to 2000 degrees, (Boyer Dep. at 32, line 14 through 33, line 4).

the fire also explained to Boyer that the most likely cause of the fire was conduction of heat through the fire starter pipe to combustibles in the fireplace enclosure. (Boyer's Report at 9; Boyer Dep. at 10, lines 18–22).

In sum, the court finds that Boyer's theory that heat conducted through a metal pipe could ignite wood in contact with the metal pipe is a product of reliable principles and methods. Although the court finds that Boyer's test does not support his theory, the court finds that Boyer's education and experience, his discussions with other experts, and especially, the discussion of conductivity in the NFPA 921 establish that Boyer's testimony is a product of reliable principles.

### B. Sufficient Facts or Data

■ Defendants assert that there is a lack of evidence to support Boyer's testimony regarding the cause of the fire. In particular, Defendants argue that there is no evidentiary support for Boyer's opinion that the fire starter pipe touched the wood framing, thereby igniting the wood framing. If the pipe was more than a small distance from the wood framing, the distance would dissipate the heat so as to make the ignition of the wood frame impossible. (Boyer Dep. at 55, line 16, through 56 line 3). Accordingly, Boyer's opinion rests on the factual basis that the pipe touched or almost touched the wood framing.

■ In reviewing the sufficiency of the facts, the court's role is to determine whether sufficient facts exist to support the witness's conclusion, not whether one party's version of the facts should be credited. As the advisory committee notes state, "[t]he emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Fed.R.Evid. 702, advisory committee notes, 2000 proposed amendment. "As expert evidence, the testimony need only assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. As circumstantial evidence, [the expert's] data and testimony need not prove the plaintiffs' case by themselves; they must merely constitute one piece of the puzzle that the plaintiffs endeavor to assemble before the jury." *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 564–65 (11th Cir.1998). After reviewing the record, especially Boyer's deposition, the court finds that Boyer has a sufficient factual basis to support his opinion.

Defendants correctly note that Boyer stated in his deposition that he has no direct evidence to establish that the pipe was touching the wood framing. (Boyer Dep. at 46, lines 15–20; 58, lines 2–9). According to Boyer, he has no direct evidence because any direct evidence was destroyed in the fire, i.e. the wood framing was burned away. (Boyer Dep. at 46, lines 15–22; 58, lines 2–9).

■ Although Boyer lacks direct evidence of the cause of the fire, Boyer may rely upon circumstantial evidence to support his theory. *Rudd*, 127 F.Supp.2d at 1343 ("Again, contrary to [Defendant's] contention, the fact that much of [the expert's] data constitutes circumstantial evidence does not of itself detract from their substantiality."). Boyer supports his opinion that the pipe touched the wood framing on two facts. First, Boyer relies on the fact that the pipe could easily slide back and forth between the firebox and the wood framing due to a lack of a seal on the hole in the firebox. (Boyer Dep. at 70, lines 7–15). Boyer theorizes that the pipe slid enough to touch the wood framing. Second, Boyer asserts that the pipe must have touched the wood because after he

went through a process of eliminating alternative explanations, he concluded that no other explanation existed to explain the cause of the fire. (Boyer Dep. at 53, lines 16–18).

Defendants attempt to discredit Boyer's opinion by presenting circumstantial evidence to show that the pipe did not slide enough to touch the wood framing and that there exist alternative explanations as to the cause of the fire. Defendants point to two pieces of circumstantial evidence to discount Boyer's factual assertion. First, Defendants point out that when Boyer investigated the fire the galvanized pipe was only sticking out of the firebox approximately four or five inches. (Boyer Dep. at 51, lines 4–18). Accordingly, Defendants argue that the pipe did not come close to touching the wood framing which was a foot away from the firebox. This measurement, as Boyer noted, has limited value in that the galvanized pipe could have been moved from the time of the fire until three days later when Boyer investigated the fire. (Boyer Dep. at 51, lines 8–10).

Second, Defendants rely on the fact that part of the copper pipe that connected into the galvanized pipe did not touch the wood framing. The portion of the copper pipe that directly connected into the galvanized pipe melted in the fire, but the part of the copper pipe that ran from the roof line down survived the fire. This portion of the copper pipe ran parallel to the wood framing and had some distance between it and the wood framing. (Boyer Dep. at 55, lines 2–6). In addition, the copper pipe was not attached to the wood framing with any kind of fasteners. (Boyer Dep. at 54, lines 4–7). Although part of the copper pipe may have been at a distance from the wood framing, Boyer stated that the cop-per pipe that connected into the galvanized pipe would not have prevented the galvanized pipe from sliding back and forth due to the flexibility of the copper pipe. (Boyer Dep. at 70, line 16 through 71, line 1). The court finds that, even though this circumstantial evidence may undermine Boyer's testimony, Boyer has presented sufficient facts to support his opinion that the fire starter pipe touched the wood framing. *Jones v. Otis Elevator Co.,* 861 F.2d 655, 663 (11th Cir.1988) ("[T]he weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility.").

## C. Application of Principles to Facts

 Although Defendants argue that Boyer's failure to consider alternative explanations undermines the sufficiency of the factual basis for his opinion, the court views this argument as an argument that Boyer fails to apply scientific principles reliably to the applicable facts. Defendants assert that because alternative explanations exist as to the cause of the fire, Boyer lacks a sufficient basis in facts and scientific principles to conclude that the fire starter pipe must have touched the wood framing, thereby igniting the wood and causing the fire.

In addition to the conductivity theory, Defendants contend that the fire could have been started by a gas leak or by an ember or some other combustible material exiting the firebox through the unsealed hole. Boyer noted that theoretically a spark could enter the unsealed hole, but stated he could not envision any way that the spark could go through the side of the firebox, which is at least two inches thick, and then exit out the other side of the firebox.[6] (Boyer Dep. at 17, line 13

---

**6.** In an attempt to discredit Boyer's opinion, Defendants note that Boyer also stated that the pipe was loose enough to slide back and forth through the unsealed hole. According-ly, Defendants assert that if the pipe was loose enough to slide back and forth, then the gap was necessarily large enough to allow an ember to enter into the hole in the firebox. This

through 18, line 3). As to the gas leak theory, Boyer discounted a small gas leak as the cause of the fire because gas is lighter than air and would rise away from the piping system and consequently, away from the heat source. (Boyer Dep. at 63, line 20 through 64, line 15). In addition, the Montgomery Fire Investigator informed Boyer that a gas leak was probably not the cause of the fire because natural gas is lighter than air and will rise. (Boyer's Report at 9; Boyer's Dep. at 10, lines 9–17). The court finds that Boyer has considered and reasonably eliminated these two alternatives.[7]

The court, however, faces a more difficult question concerning the possibility of a large gas leak causing the fire. Boyer stated in his deposition that he could theoretically see that a large enough gas leak could have caused the fire. (Boyer Dep. at 64, line 22 through 65, line 12). Boyer did not explain in his deposition or in his report why he thought that conductivity of heat through the metal pipe was more likely the cause of the fire than a large gas leak.

Although Boyer did not eliminate a large gas leak as a possible cause of the fire, Boyer's conductivity theory remains reliable. As required by Rule 702, Boyer has not rested his opinion simply on his authority as an expert, rather he relies upon his experience, explains how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *Rudd,* 127 F.Supp.2d at 1344 (citing Fed.R.Evid. 702, advisory committee notes, 2000 amendment).

Moreover, the fact that a large gas leak remains uneliminated as a possible cause of the fire goes to the weight rather than the admissibility of Boyer's testimony. *Ambrosini v. Labarraque,* 101 F.3d 129, 140 (D.C.Cir.1996) (holding that "the fact that several possible causes might remain uneliminated" goes to the weight rather than the admissibility of the expert's testimony) (citing *Mendes–Silva v. United States,* 980 F.2d 1482, 1487 (D.C.Cir.1993)). On cross-examination, Defendants have the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility. *Jones,* 861 F.2d at 663; *see also Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1312 (11th Cir.1999) ("The gatekeeper role, however, is not intended to supplant the adversary system or the role of the jury...."). "[B]ecause [Boyer] has made his reasoning processes and data sources sufficiently transparent ..., if there are counter-arguments and counter-evidence available to suggest [Boyer] has failed to consider a possible cause or is wrong to rely so conclusively on the physical indicia he has specified, the adversary system will be competent to make them evident [through] 'vigorous cross-examination' and 'presentation of contrary evidence.'" *Rudd,* 127 F.Supp.2d at 1344. Therefore, the court finds that Boyer has applied the principles and methods reliably to the facts of the case in reaching his conclusion that the fire was caused by the conduction of heat through the fire starter pipe to the wood framing, even though an alternative explanation as to the cause of the fire remains a possibility.

---

evidence may undermine the weight of Boyer's opinion, but it does not affect its admissibility. *Jones,* 861 F.2d at 663.

7. Although the court finds that Boyer reasonably eliminated these two alternatives, the court makes no finding as to whether Boyer is correct in determining that these alternative explanations could not have occurred.

## IV. *CONCLUSION*

For the reasons stated above, the court finds, by a preponderance of the evidence, that Boyer's testimony is based on sufficient facts, that his testimony is the product of reliable principles, and that he has applied the principles and methods reliably to the facts of the case. Therefore, the court finds that Boyer's testimony has sufficient reliability to satisfy the admissibility requirements of Rule 702.[8] Accordingly, it is hereby ORDERED that Defendants' Motion in Limine to Exclude Certain Testimony of Plaintiff's Expert Ralph Boyer is DENIED.

8. Defendants do not assert that Boyer's testimony lacks the required relevancy. Even assuming that Defendants challenge the relevancy of Boyer's testimony, the court finds that Boyer's testimony is relevant to assist the jury in determining the origin and possible cause of the fire.