RENDERED: NOVEMBER 18, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0258-MR

AMERICAN NATIONAL PROPERTY
& CASUALTY COMPANY A/S/O
DANA COLLETT AND GEORGE
COLLETT                                                          APPELLANT


                          APPEAL FROM JOHNSON CIRCUIT COURT
v.                        HONORABLE JOHN DAVID PRESTON, JUDGE
                          ACTION NO. 19-CI-00381


R&N ENTERPRISES, INC. D/B/A
B&W TV AND APPLIANCE CO.                                          APPELLEE


                                OPINION
                        REVERSING AND REMANDING

                              ** ** ** ** **

BEFORE: ACREE, McNEILL, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE: American National Property & Casualty Company

a/s/o Dana Collett and George Collett ("Appellant") appeals from a summary

judgment of the Johnson Circuit Court in favor of R&N Enterprises, Inc. d/b/a

B&W TV and Appliance Co. ("Appellee"). Appellant argues that the circuit court

erred in excluding the testimony of Appellant's experts and in denying its request

for a *Daubert*[1] hearing.  After careful review, we conclude that the testimony was improperly excluded.  Accordingly, we reverse and remand the judgment on appeal.

## FACTS AND PROCEDURAL HISTORY

Appellee is an appliance store in Staffordsville, Kentucky.  More than one year prior to the subject fire, Appellee sold a Whirlpool double oven to George and Dana Collett ("the Colletts") and installed it in their home.  The new oven replaced an oven that Appellee sold the Colletts some 15 years earlier.  Like the old oven, the new oven was installed in a wood cabinet.

On March 15, 2018, a fire occurred in the Colletts' home causing $555,381.17 in damages.  The home was insured by Appellant, which paid benefits to the Colletts per the policy of insurance.  On November 22, 2019, Appellant filed the instant action against Appellee in Johnson Circuit Court.  As a basis for the action, Appellant alleged that, 1) the oven sold and installed by Appellee caused the Collett's house fire; 2) Appellant paid $555,381.17 in damages to the Colletts under the terms of their policy of insurance; and 3) Appellant was entitled to recover damages from Appellee in its capacity as the Colletts' subrogee. Specifically, Appellant alleged that the cabinet containing the new oven did not

---

[1] *Daubert v. Merrell Dow Pharmaceuticals Inc*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

have a solid bottom, and thus was not a "complete enclosure" within the meaning of the installation instructions.[2] It asserted that Appellee was negligent in installing the oven without a complete enclosure which proximately resulted in the fire.

The matter proceeded in Johnson Circuit Court and discovery was undertaken. Mrs. Collett stated in a deposition that on the morning of the fire, she placed the bottom oven in self-cleaning mode in anticipation of preparing an upcoming Easter meal. She stated that she followed the instructions in the manual, removed the racks in the bottom oven, and closed the door before initiating the self-cleaning mode. She remained at home for about 90 minutes after starting the oven.

Mrs. Collett stated that a pull-out drawer was located under the bottom oven in which she stored oven mitts, aprons, and dish towels. She described the drawer as "fairly full." Mrs. Collett left the home around 8:30 a.m., and returned at about 11:10 a.m. Upon her return, she saw heavy smoke emanating from the house. She attempted to enter the house through a side door and a front door, but the smoke was too heavy. She saw flames coming out of the kitchen windows and called 911.

---

[2] The oven was supported by metal runners and allegedly was not enclosed by a wooden bottom.

Malcolm Ratliff, president of Appellee, stated that when installing the new oven in the Collett's kitchen, his employees merely removed the old oven and inserted the new one. They did not alter the existing cabinetry, which housed the old double oven during its 15 years of operation.

Both Colletts stated that there were no open flames or burning candles in the house at the time of the fire, nor were there any phone chargers, wood burning stoves, or space heaters in the kitchen which could have been a possible ignition source of the fire. Paintsville fire chief Rick Ratliff investigated the fire and concluded that its cause was undetermined.

Appellant engaged two expert witnesses. The first proffered expert was James Douglas Burns. Burns testified that he is a certified fire inspector level 1 with the Kentucky Department of Building and Construction, and a level 2 fire service instructor with the Kentucky Fire Commission. At the time of his testimony, Burns was employed by EFI Global as a fire investigator. Burns has an extensive curriculum vitae which is part of the record.

Appellant's second expert witness was Chris Hollis. He is also employed by EFI Global. Hollis is a licensed engineer and fire investigator with professional training in appliance fire investigation. He testified that he has experience in oven fires.

Burns and Hollis worked together in investigating the fire at issue. Burns visited the scene of the fire on March 20, 2018, conducted an inspection, and interviewed the Colletts. He determined that fire began in the kitchen near the subject oven. As the house was heavily damaged by the fire, Burns took possession of the oven and all related electrical components back to their connection at the electrical panel. Burns later returned to the property with representatives of Appellee and Whirlpool for additional inspection. They agreed that the fire began along the east wall of the kitchen.

Burns produced a report finding that the subject oven was the most probable cause of the fire. He stated that his investigation ruled out other possible causes of the fire. Burns believed the fire pattern indicated that it started in the kitchen and that the probable source of ignition was combustible materials coming into contact with the bottom exterior surface of the oven. He stated that he found charred cloth materials adhered directly to the bottom of the oven.

Hollis also examined the oven. He determined that the oven showed no defect or deficiency, and found no evidence of other ignition sources in the kitchen. Hollis noted the installation instructions for the oven at issue, which stated that a "recessed installation area must provide complete enclosure around the recessed portion of the oven." He found that no wood or cabinet material was observed on the bottom of the oven during examination, and surmised that the

bottom of the oven was not enclosed with wood. He concluded that had the bottom of the oven been enclosed, it would not have ignited the drawer contents resulting in the fire.

Appellee retained Adam Roy as an expert. Roy is an owner of Fire Explosion Consultants in Ohio and a certified fire investigator. Roy relied on the reports generated by Burns and Hollis. He agreed that the fire originated in the kitchen along the east wall. Roy tested a new oven provided by Appellee, which Appellee claims was identical to the Colletts' oven. His testing indicated that the outside of the oven did not reach a temperature sufficient to cause combustion, though in his testing, two thermocouples used to measure the temperature fell off the oven. Appellant asserted that the oven tested by Roy was not identical to the Colletts' oven.

On November 24, 2021, Appellee filed a motion to exclude Appellant's experts and for summary judgment. In support of the motion, Appellee argued that Appellant did not have a reliable expert who could testify that the Whirlpool double oven, in self-cleaning operation, was a competent ignition source for the kitchen materials in the drawer beneath the oven. It asserted that the failure of Burns and Hollis to adhere to National Fire Protection Association ("NFPA") testing standards created an impermissible analytical gap under *Daubert*. Specifically, Appellee argued that Burns and Hollis conducted no

physical testing and produced no data to support a conclusion that the alleged lack of an enclosure was a factor in causing the fire. Appellee also filed a motion to supplement the record with documentation provided by Whirlpool.

On December 13, 2021, the Johnson Circuit Court entered findings of fact, conclusions of law and summary judgment in favor of Appellee. Citing *Daubert*, Kentucky Rules of Evidence ("KRE") 702, and several extra-jurisdictional cases, the court found that Burns and Hollis did not have a reliable opinion on the Whirlpool oven being a competent ignition source because they failed to adhere to scientific methodology set out in the NFPA standards. Specifically, the court determined that Burns and Hollis failed to physically test their hypothesis that the oven was a competent ignition source, and did not produce or acquire from Whirlpool or Underwriters Laboratories ("UL") any data to support their conclusion. As the conclusions of Burns and Hollis were at best hypothetical and speculative, the court determined that their testimony should be excluded per *Daubert*. In the absence of such testimony, the court found that summary judgment in favor of Appellee was warranted. This appeal followed.

**STANDARDS OF REVIEW**

On appeal from a *Daubert* ruling, the question is whether the decision of the findings of fact made by the trial court were clearly erroneous and whether the trial court abused its discretion when determining whether the evidence was

admissible.  *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004); *Smith v. Commonwealth*, 181 S.W.3d 53, 59 (Ky. App. 2005).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rules of Civil Procedure ("CR") 56.03. "The record must be viewed in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment should be granted only if it appears impossible that the nonmoving party will be able to produce evidence at trial warranting a judgment in his favor. *Id.* "Even though a trial court may believe the party opposing the motion may not succeed at trial, it should not render a summary judgment if there is any issue of material fact." *Id.* Finally, "[t]he standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996).

## ARGUMENTS AND ANALYSIS

Appellant argues that the Johnson Circuit Court committed reversible error in excluding the testimony of Burn and Hollis. Specifically, it asserts that the court erred: 1) in relying on Roy's opinions and conclusions to exclude Hollis as an expert; 2) in excluding the testimony of Burns and Hollis pursuant to NFPA standards; and 3) invading the province of the jury. It argues that the circuit court erred in excluding its experts without giving it time to respond to Appellee's motion to supplement and to review documents produced by UL. It also contends that it was entitled to a *Daubert* hearing.

On the first of these contentions, Appellant argues that the circuit court improperly relied on Roy's opinions in support of its decision to exclude Hollis's testimony. Appellant asserts that Roy is not qualified to render engineering opinions. It notes that Roy testified that his role in this matter was to "conduct a fire investigation review." According to Appellant, Roy was not retained to give engineering opinions. In contrast, Appellant notes that Hollis has excellent credentials and experience in the field of fire investigation, which Appellee has not challenged. Accordingly, Appellant contends that Roy's failure to agree with Hollis's speculation as to the source of the fire could not form a proper basis for excluding Hollis.

Roy is a certified fire investigator with the International Association of Arson Investigators, and a certified fire and explosion investigator with the National Association of Fire Investigators. He is a licensed private investigator in five states and has completed or taught a myriad of professional courses and seminars in the field of fire investigation. The circuit court determined that he was qualified to render an opinion in this matter, and that determination is supported by the record.

Irrespective of Roy's qualifications, and as noted below, the circuit court's disqualification of Hollis was not based on Roy's opinion of Hollis's conclusions but rather on Hollis's conclusions themselves. The court found Hollis's conclusions to be speculative and not based on evidence per *Daubert*. Roy's disagreement with Hollis's conclusion had little bearing the circuit court excluding Hollis's testimony. We do not conclude that the Johnson Circuit Court improperly relied on Roy's disagreement with Hollis's conclusions as a basis for excluding Hollis's expert testimony.

Appellant goes on to argue that the circuit court erred in applying NFPA 921 to exclude the testimony of Burns and Hollis.

> The NFPA 921 sets forth professional standards for fire and explosion investigations and provides a six step process in which an investigator must: (1) recognize that a need exists to determine what caused the fire; (2) define the problem; (3) collect data; (4) analyze the data; (5) develop a hypothesis based on the data; and (6) test

the hypothesis. Technical Committee on Fire
Investigations, National Fire Protection Association, Inc.
921: Guide for Fire and Explosion Investigations, 9-10
(1998).

*Royal Ins. Co. of America v. Joseph Daniel Const., Inc.*, 208 F. Supp. 2d 423, 426 (S.D.N.Y. 2002). Appellant asserts that per Burns's affidavit, he complied with all elements of NFPA 921 in conducting his investigation. Specifically, Appellant contends that Burns properly employed deductive reasoning to follow the scientific method and test his hypothesis in this matter. Appellant notes that Burns acknowledged in his testimony that NFPA 921 outlined the scientific methodologies and protocol to follow. Appellant directs our attention to NFPA 921, 4.3.6, which states:

> Testing of the hypothesis is done by the principle of deductive reasoning in which the investigator compares the hypothesis to all known facts as well as the body of scientific knowledge associated with the phenomena relevant to the specific incident.
>
> A hypothesis can be tested physically by conducting experiments, analytically by applying accepted scientific principles, or by referring to scientific research.

Appellant also notes that "deductive reasoning" is defined in Chapter 3 of NFPA 921, which states as follows: "Deductive Reasoning: The process by which conclusions are drawn by logical inference from given premises."

The focus of Appellant's argument on this issue is its contention that the circuit court improperly concluded that Burns and Hollis did not adhere to

-11-

scientific methodology outlined in NFPA 921, and therefore do not have reliable opinions on the Whirlpool oven being a competent ignition source. In its findings of fact, conclusions of law, and judgement at paragraph 39, the court stated,

> Burns and Hollis do not have a reliable opinion on the Whirlpool oven being a competent ignition source because they failed to adhere to the scientific methodology outlined in NFPA 921. In fact, the NFPA is not even referenced in their reports. Burns and Hollis failed to test their hypothesis that the oven was a competent ignition source. It is not alleged that the oven malfunctioned. As outlined below, the ignition competency of the oven in self-cleaning mode is amenable to testing and/or data requests from Whirlpool and/or Underwriters Laboratories. The failure to test creates an impermissible analytical gap under *Daubert* and makes Burns and Hollis' opinions unreliable under KRE 702.

In examining the question of whether to admit or exclude expert testimony under *Daubert*, the trial court must decide whether the testimony is both relevant and reliable. *Miller*, *supra*. The factors to consider under *Daubert* in determining the admissibility of an expert's proffered testimony include, but are not limited to: 1) whether the theory or technique can be and has been tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) whether, with respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and 4) whether the theory or technique enjoys general acceptance within the scientific community. *Daubert*, 509 U.S. at 592-94, 113 S. Ct. 2796-97.

-12-

Further, KRE 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if:

(1) The testimony is based upon sufficient facts or data;

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

Finally, when considering *Daubert* and the Kentucky Rules of

Evidence in concert, we see that,

[i]n *Stringer v. Commonwealth*, 956 S.W.2d 883, 891 (Ky. 1997), the Kentucky Supreme Court set forth a four factor test to determine whether expert testimony is admissible: (1) the witness is qualified to render an opinion on the subject; (2) the subject matter satisfies the requirements of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579; (3) the subject matter satisfies the test of relevancy in KRE 401, subject to the balancing requirement of KRE 403; and (4) the opinion will assist the trier of fact pursuant to KRE 702.

*Hibbett v. Commonwealth*, No. 2005-CA-001716-MR, 2007 WL 706855, at *3

(Ky. App. Mar. 9, 2007).

Appellee asserts, and the circuit court so found, that the framework

for evaluating the reliability of the scientific principles of fire investigation found

-13-

in NFPA 921 is controlling in the matter before us. Appellee, however, has not cited any case law or statutory law from this jurisdiction so holding. Rather, Appellee has relied on unpublished federal case law and other extra-jurisdictional case law, wherein courts looked to NFPA 921 for guidance in fire investigations. While the guidelines of the National Fire Protection Association provide insight into fire investigation, and though extra-jurisdictional case law can be informative, our research has not revealed any Kentucky case which applied NFPA standards to fire investigation or holds that NFPA standards are controlling.[3] As such, we constrain our analysis to the established precedent set out in *Stringer*.

On the first element of *Stringer*, Burns and Hollis are qualified to render opinions on the subject. Both witnesses have extensive training, certifications, and experience in fire investigation, including having completed or taught dozens of classes or seminars on the subject. Their respective curriculum vitae are included in the record. As to the second element, the subject of fire investigation satisfies the *Daubert* test, as fire investigation theory or technique enjoys general acceptance within the scientific community.

The third element of *Stringer* is whether the subject matter satisfies the test of relevancy in KRE 401. "Relevant evidence means evidence having any

---

[3] Only three published Kentucky cases reference the National Fire Protection Association. One of those cases was abrogated, and the other two do not address NFPA 921.

-14-

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401 (internal quotation marks omitted). The opinions of Burns and Hollis are relevant, as they tend to make the existence of a consequential fact – in this case the probability of where the fire originated – more or less probable than it would be without their testimony.

And finally, as to the last element, we believe that the opinions of Burns and Hollis will assist the trier of fact pursuant to KRE 702. That is to say, their testimony is based upon sufficient facts or data; the testimony is the product of reliable principles and methods; and, they have applied the principles and methods reliably to the facts of the case. KRE 702.

It is important to note that Burns and Hollis drew conclusions only as to probabilities, not absolutes. Burns's report stated that,

> [f]ire pattern analysis indicated that the fire originated in the kitchen portion of the residence. Evidence indicated *that the most probable source of ignition* resulted from combustible materials too close to an appliance in self-cleaning mode. Evidence indicated that the first fuel ignited consisted of ordinary combustibles such as cloth, wood and plastics. Engineering destructive study identified that there was no observed mechanical or electrical failure with the [W]hirlpool double oven unit, therefore *the most probable events* bringing the ignition and the fuel together included ordinary combustible materials such as cloth materials coming in contact with the external cabinet surface of the [W]hirlpool double oven while in the self-cleaning cycle.

The cause of this fire is classified as accidental.

(Emphasis added).

Similarly, Hollis concluded that, "[i]t is *probable* that the bottom of the cabinet's recessed area was not enclosed, and that the contents of the drawer overheated and ignited during the reported oven's self-cleaning cycle." (Emphasis added). Neither Burns nor Hollis conclusively determined the cause of the fire.

Appellee's argument centers on the fact that Burns and Hollis did not measure the external temperature of the Whirlpool oven while it was in the self-cleaning mode. It argues that their opinions as to causation are unsupported by data gathered from physical testing and are therefore inadmissible per NFPA 921. *Arguendo*, even if the circuit court was properly bound by the application of NFPA 921, it expressly allows for deductive reasoning or "thought experiments" in lieu of physical testing. NFPA 921, 4.3.6., states that,

> [t]esting of the hypothesis is done by the principle of deductive reasoning, in which the investigator compares his or her hypothesis to all the known facts as well as the body of scientific knowledge associated with the phenomena relevant to the specific incident. A hypothesis can be tested either physically by conducting experiments or analytically by applying scientific principles in "thought experiments."

Appellee asserts that the opinions of Burns and Hollis are little more than mere speculation which do not rise to the level of deductive reasoning or

thought experiments.  We disagree.  Burns and Hollis found, and Appellee so acknowledges, that the fire started on the east wall of the kitchen.  They excluded the possibility of other ignition sources based on physical examination and interviews with the Colletts.  Additionally, they found charred cloth material on the bottom of the oven, and noted that combustible kitchen towels and other items were stored in the drawer directly under the oven.  And finally, they found no evidence of a full enclosure under the oven, though they acknowledged that it could have been destroyed by the fire.  In sum, we conclude that their opinions rise to the level of deductive reasoning or thought experiments, and are more than mere baseless speculation.

Lastly, Appellant argues that the circuit court erred in invading the province of the jury; in excluding its experts without giving Appellant time to review Appellee's documents from Underwriters Laboratory; and, in denying its request for a *Daubert* hearing.  For the foregoing reasons, these arguments are moot.

## CONCLUSION

Per *Miller*, *supra*, we conclude that the decision to exclude the testimony of Burns and Hollis was clearly erroneous and constituted an abuse of discretion.  When viewing the record in a light most favorable to Appellant and resolving all doubts in its favor, *Steelvest*, *supra*, we find that genuine issues of

-17-

material fact remain for adjudication.  *Scifres*, *supra*.  Accordingly, we reverse the findings of fact, conclusions of law, and summary judgment of the Johnson Circuit Court, and remand the matter for further proceedings.


ALL CONCUR.


BRIEFS FOR APPELLANT:

J. Warren Keller
Ashley P. Hoover
London, Kentucky

BRIEF FOR APPELLEE:

Steven C. Call
Campbellsville, Kentucky