**G. Oliver KOPPELL, Arnold Linhardt, and Marie Morrison, Plaintiffs,**

v.

**NEW YORK STATE BOARD OF ELECTIONS, et al., Defendants.**

No. 98 CIV. 4920(SHS).

United States District Court, S.D. New York.

May 11, 2000.

478

Fred Taylor Isquith, Wolf, Haldenstein, Adler, Freeman & Herz LLP, New York city, for plaintiffs.

## OPINION and ORDER

STEIN, District Judge.

Plaintiffs G. Oliver Koppell—a former candidate for the Democratic nomination for New York Attorney General—and Arnold Linhardt and Marie Morrison—two New York state voters—brought this action challenging the constitutionality of New York Election Law § 7–116(3). For primary elections in counties outside of New York City this statute provides that the position of candidates on the ballot is determined by lottery. *See* N.Y. Election Law § 7–116(3). Plaintiffs argue that the statute violates their rights under the First and Fourteenth Amendments to the United States Constitution due to the existence of "position bias," which is the hypothesis that a certain number of votes—called the "windfall vote"—will be cast for whichever candidate has his or her name listed first on the ballot solely by virtue of being listed in that first ballot slot.

Upon commencement of this action, plaintiffs sought a preliminary injunction enjoining enforcement of Election Law § 7–116(3). Following an expedited evidentiary hearing, the preliminary injunction was denied; that determination was affirmed on appeal. *See* 8 F.Supp.2d 382 (S.D.N.Y.1998), *aff'd* 153 F.3d 95 (2d Cir. 1998). Familiarity with those opinions is assumed.

Each party has now proffered reports and testimony from experts regarding the existence vel non of position bias: plaintiffs' proposed expert is Dr. Henry Bain;

defendants' proposed experts are Dr. James Chapin and Dr. Robert Darcy. Defendants have moved to strike Dr. Bain's report and testimony and plaintiffs have moved to strike Dr. Chapin's report and testimony on the grounds that each failed to meet the test enumerated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), for relevancy and reliability. In addition, plaintiffs argue that both the Chapin report and the Darcy report should be excluded due to defendants' failure to provide the information required by Fed. R.Civ.P. 26(a)(2)(B).

On March 1 and April 10, 2000, a hearing was held to determine whether the requirements of *Daubert* have been met. For the reasons set forth on the record at the conclusion of the hearing and for the reasons set forth below, defendants' motion to strike Dr. Bain's report and testimony is denied, plaintiffs' motion to strike Dr. Darcy's report and testimony is denied, and plaintiffs' motion to strike Dr. Chapin's report and testimony is granted.

## I. DISCUSSION

■ In determining the admissibility of expert testimony, whether based upon "scientific," "technical" or "other specialized knowledge," the Supreme Court has adopted a two-step inquiry in which trial judges must engage to determine "whether the reasoning or methodology underlying the [expert's] testimony is ... valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786; *see Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The purpose of an evidentiary hearing held pursuant to *Daubert* is to determine whether the proffered "expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Zuchowicz v. United States,* 140 F.3d 381, 386 (2d Cir.1998) (quoting *Daubert,* 509 U.S. at 597, 113 S.Ct. 2786). The admissibility of evidence

must be established by a preponderance of the evidence, *see Daubert,* 509 U.S. at 592 n. 10, 113 S.Ct. 2786, and the burden of demonstrating that the testimony is competent, relevant, and reliable rests with the proponent of the testimony. *See Union Bank of Switzerland v. Deutsche Financial Services Corp.,* No. 98 Civ. 3251, 2000 WL 178278 (S.D.N.Y. Feb. 16, 2000) (citation omitted).

■ In *Daubert* the Supreme Court set out four non-exclusive factors to aid the trial court in determining whether an expert's reasoning or methodology is reliable: (1) whether the theory or technique relied on has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation in the case of a particular scientific technique; and (4) whether the theory or method has been generally accepted by the scientific community. *See Daubert,* 509 U.S. at 593–94, 113 S.Ct. 2786. However, the test of reliability is a "flexible" one, and the four factors limned in *Daubert* do not constitute a "definitive checklist or test," but rather must be tailored to the facts of the particular case. *See Kumho Tire,* 526 U.S. 137, 150, 119 S.Ct. 1167 (quoting *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786).

■ Whether the *Daubert* factors are pertinent to assessing reliability in a particular case depends on "the nature of the issue, the expert's particular expertise, and the subject of his testimony," and thus "a trial court should consider the specific factors identified in Daubert where they are reasonable measures of the reliability of expert testimony." *Id.* Ultimately, it is the role of the trial court as gatekeeper to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert

in the relevant field." *Id.* at 152, 119 S.Ct. 1167.

■ The trial court must not only determine whether the testimony is reliable; it must also determine whether an expert's testimony is "relevant to the task at hand," namely, whether the expert's reasoning or methodology can be properly applied to the facts before the court. *See Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786; *Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 81 (2d Cir.1997). In order to determine whether the expert's testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R.Evid. 702, the testimony must not only be reliable but must be relevant in that it "fits" the facts of the case. *Daubert,* 509 U.S. at 591–92, 113 S.Ct. 2786.

We now turn to applying those principles to the reports at issue in this case.

A. Dr. Bain

■ Defendants have alleged that Dr. Bain's testimony and expert report fail to meet the *Daubert* standards for reliability and relevance. Upon reading that report, hearing the testimony adduced, and considering the evidence, this Court concludes that the Bain report and testimony meet the *Daubert* threshold.

Dr. Bain co-authored a 1957 monograph entitled *Ballot Position and Voter's Choice,* which studied the effects of position bias in Michigan and Ohio. *See* Tr. at 17. This work has been cited in more than 45 subsequent scholarly articles. *See* Plaintiffs' Exh. A. Dr. Bain has also testified as an expert on position bias in two California state cases. *See* Tr. at 9.

Dr. Bain's analysis of position bias is based primarily on a study that he conducted, with the help of Jonathan Koppell, of the 1998 Democratic primary elections in New York City. For this purpose he studied 79 electoral contests, one of which was the primary for Attorney General. In New York City the candidates rotate equally among all positions on a ballot on an election precinct by election precinct basis. While this action concerns the position bias that would have occurred outside of New York City, he undertook to study the elections within New York City because the rotation of the candidates made it possible, theoretically, to isolate the effects of any position bias. In conducting this study, Bain relied on a methodology that was substantially similar to the methodology described in his 1957 monograph.

Bain measures position bias, or effect, in two ways. First, he compares each candidate's percentage of the total vote in the ballots on which he or she appeared in first place with the candidate's percentage of the vote in all of the election district's other ballots. Any excess percentage when in first place is considered evidence of position effect. He found a position effect with a reasonable statistical significance in 65 of the contests, with an average excess percentage of 8.5%. The second method measures the overall "bounce" candidates receive from being in the first position. "Bounce" is the term Bain uses to describe the average percentage increase that all the candidates in a given race get from being in the first position on the ballot.

As noted above, Bain's methodology has been subject to extensive peer review, and there is a great deal of literature supporting and attacking, as well as citing, Bain's monograph and his methodology. *See* Trial Tr. at 20–45, 92–96. Accordingly, the Bain report meets the *Daubert* threshold for reliability.

Because the Bain report passes the *Daubert* threshold, the balance of defendants' criticisms are relevant to the weight Dr. Bain's report is to be given by the trier of fact, but not to its admissibility. Accordingly, Dr. Darcy's criticism's of Dr. Bain's work are instructive but not dispositive on the issue of whether the Bain report can step over the *Daubert* threshold.

Moreover, for the same reasons, the Court finds that Dr. Bain's report and

testimony meet the *Daubert* threshold of relevance. While defendants have offered evidence that tends to make the Bain report less probative, they have not offered evidence that would bar its admissibility. Dr. Bain's study of the 1998 primaries was designed to determine the precise magnitude of position effect in those elections and will assist the trier of fact in determining whether there is a position effect and whether this effect rises to the level of a constitutional injury.

### B. Dr. Chapin

■ Plaintiffs move to strike Dr. Chapin's expert report and testimony. Upon reading the Chapin report, hearing the testimony adduced, and considering the evidence, this Court grants plaintiffs' motion to strike Dr. Chapin's report on the grounds that (1) the report fails to pass the *Daubert* threshold, and (2) that defendants have failed to provide adequately the bases of Dr. Chapin's opinions in violation of Fed.R.Civ.P. 26(a)(2)(B).

The Chapin report analyzes state-wide New York primaries from 1974 through 1998 and argues that position bias was not determinative in the outcomes of the relevant statewide primary elections. The report discusses each electoral race and describes the reasons, in Dr. Chapin's opinion, that each election turned out as it did. For each primary, he describes the salient issues in the election, as well as such other factors as the qualities of each candidate, his or her relative financial advantage, and the candidate's popularity among various demographic groups.

The report is apparently based upon Chapin's political experience and historical education and uses what he terms the "methodology of history." *See* Tr. at 187. He relied on campaign literature, newspapers, conversations with certain undisclosed individuals, and his "own memories." *See* Tr. at 188–89. The explanations in each instance are largely anecdotal and do not cite particular facts, pieces of literature, or articles. *See* Defendants' Exh. 12. Chapin testified that in connection with this litigation he simply studied *The New York Times* and *The New York Daily News* for the nine months prior to each primary, and looked for "every political story in every day of those two newspapers." *See* Tr. at 206. Defendants never provided plaintiffs with the particular stories upon which Dr. Chapin relied within each nine month period. *See* Tr. at 208. Moreover, the report does not purport to rely upon any form of quantitative analysis. *See* Tr. at 204.

The Chapin report fails to meet the threshold for reliability required by *Daubert.* It does not rely upon any discernible methodology. Rather, the report is essentially a compendium of Dr. Chapin's opinions about the elections. The report barely discusses the existence of position effect in any given election and is not methodologically sound enough to provide reliable evidence. Moreover, this methodology has not been published, tested or subject to peer review.

In addition, according to his own testimony, Dr. Chapin's opinions and judgments are in many cases those he validates based on the opinions of others. When describing the basis for his judgment regarding one particular election, Dr. Chapin testified that he knew that his own judgment was correct because "everybody who was involved, including myself, felt the same way, that is to say, they all agreed." *See* Tr. at 193. To the extent that the report is merely relying on consensus or the opinions of others, Chapin lacks any particular expertise. Moreover, while Dr. Chapin has significant political experience, *see* Defendants' Exh. 21; Tr. at 182–83, he has not asserted expertise in the area of position bias.

Accordingly, because the techniques upon which Dr. Chapin relies have neither been tested nor subject to peer review, and because the analysis he provides is largely anecdotal and does not rely upon any particular type of expertise that would assist the trier of fact in rendering the

ultimate determination in this action, plaintiffs' motion to strike the Chapin report is granted.

Moreover, pursuant to Fed.R.Civ.P. 26(a)(2)(B), defendants are required to have disclosed the bases for Dr. Chapin's expert opinions. On March 6, 2000, after the first portion of the hearing in this matter, defendants provided plaintiffs with the following materials which apparently form the bases of Dr. Chapin's expert opinions: 117 campaign finance reports, 50 pieces of campaign literature, 26 newspaper articles and a list of date ranges—covering up to nine month periods—for *The New York Times, The New York Daily News, The New York Post* and *New York Newsday. See* Memorandum of Law in Further Support of Plaintiffs' Motion to Strike Report of Dr. James Chapin, at 3–4. A list of dates, covering nine month periods, renders this disclosure meaningless and leaves plaintiffs and the Court without a clear understanding of the data upon which Dr. Darcy relied, as well as the specific bases for his opinions. Because defendants failed to provide sufficiently detailed information regarding the bases of Dr. Chapin's opinion, the Chapin report must be excluded on these grounds as well.

### C. Dr. Darcy

Plaintiffs moved to strike the Darcy report on the grounds that defendants failed to provide certain information required pursuant to Fed.R.Civ.P. 26(a)(2)(B). Because this failure has been remedied, plaintiffs' motion is denied.

### III. Conclusion

For the foregoing reasons, plaintiffs' motion to strike the Chapin report is granted, and plaintiffs' motion to strike the Darcy report is denied. Defendants' motion to strike the Bain report is also denied.

SO ORDERED.