**TRAVELERS PROPERTY & CASUALTY CORP.**

v.

**GENERAL ELECTRIC CO.**

**No. Civ.A. 3:98CV50(SRU).**

United States District Court, D. Connecticut.

July 26, 2001.

Frederick B. Tedford, Christopher J. Coxon, Danaher, Tedford, Lagnese & Neal, Christopher J. Sochacki, Cramer, Al-

issi & Fontaine PC, Hartford, CT, for Plaintiff.

Kenneth A. Krajewski, Neil A. Goldberg, Saperston & Day, Buffalo, NY, Mark B. Seiger, Janet Marie Helmke, Edwards & Angell, Hartford, CT, John P. Freedenberg, Goldberg, Segalla, Buffalo, NY, for Defendant.

### RULING ON DEFENDANT'S MOTION IN LIMINE

UNDERHILL, District Judge.

The plaintiff, Travelers Property and Casualty Corporation ("Travelers"), as subrogee to the rights of its insureds, brought this action against the General Electric Company ("GE") to recover damages and other relief in connection with twenty-three fires allegedly caused by a design defect in certain GE clothes dryers.

On or about July 19, 1999, the plaintiff's employee and Laboratory Director, John P. Machnicki ("Machnicki"), issued a three-page expert report, opining that the design of the GE dryer permits the accumulation of lint behind the dryer drum in an area undetectable to the homeowner. Machnicki further opined that the lint that accumulates in this area can be ignited by the dryer's heating elements that are located in close proximity to the rear of the drum, thereby causing a fire.

GE deposed Machnicki over a period of twelve days between September 13, 1999 and June 14, 2000. On September 29, 2000, GE moved to preclude Machnicki's proffered opinion testimony pursuant to the principles articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny. Both parties requested oral argument in connection with the motion.

On December 18, 2000, the court heard oral argument on the motion and determined that a *Daubert* hearing was necessary.

On July 16, 2001, the court held a day-long evidentiary hearing during which it took evidence and heard the testimony of Machnicki. The court also heard additional argument from the parties in connection with GE's *Daubert* motion.

For the reasons set forth on the record at the conclusion of the hearing, as set forth more formally below, GE's "Motion in Limine to Preclude the Proffered Opinion Testimony of John P. Machnicki" (**doc.# 90**) is denied.

*Applicable Standard*

The Federal Rules of Evidence assign to the trial court the task of performing a "gatekeeping" function with respect to expert testimony. *See* Advisory Committee Notes, 2000 Amendments, Fed.R.Evid. 702 (trial judges have "the responsibility of acting as gatekeepers to exclude unreliable expert testimony."). Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 "establishes a standard of evidentiary reliability," *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786, and "requires a valid ... connection to the pertinent inquiry as a precondition to admissibility." *Id.* at 592, 113 S.Ct. 2786; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

In determining the admissibility of expert testimony, whether based on "scientific," "technical" or "other specialized knowledge," the Supreme Court has adopted a two-step inquiry under which trial judges must determine "whether the reasoning or methodology underlying the [expert's] testimony is ... valid and ... whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786; *see also Kumho Tire*, 526 U.S. at 141, 119 S.Ct. 1167; *Koppell v. New York State Board of Elections*, 97 F.Supp.2d 477, 479 (S.D.N.Y.2000); *Cayuga Indian Nation of New York v. Pataki*, 83 F.Supp.2d 318 (N.D.N.Y.2000). Specifically, the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) ("Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to ensure that any and all scientific testimony ... is not only relevant, but reliable.") (internal quotation marks and citation omitted).

■ The purpose of an evidentiary hearing held pursuant to *Daubert*, therefore, is to determine whether the proffered "expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Zuchowicz v. United States*, 140 F.3d 381, 386 (2d Cir.1998) (quoting *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786); *see Koppell*, 97 F.Supp.2d at 479. The admissibility of evidence must be established by a preponderance of the evidence, *see Daubert*, 509 U.S. at 592 n. 10, 113 S.Ct. 2786; *Koppell*, 97 F.Supp.2d at 479, and the burden of demonstrating that the testimony is competent, relevant, and reliable rests with the proponent of the testimony. *See*

*Koppell*, 97 F.Supp.2d at 479; *Union Bank of Switzerland v. Deutsche Financial Services Corp.*, No. 98 Civ. 3251, 2000 WL 178278 at *8 (S.D.N.Y. Feb. 16, 2000) (citation omitted); *see also* Advisory Committee Notes, 2000 Amendments, Fed. R.Evid. 702 ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.") (citing *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)).

■ In assessing the reliability of a proffered expert's testimony, a district court's inquiry under *Daubert* must focus, not on the substance of the expert's conclusions, but on whether those conclusions were generated by a reliable methodology. *See Daubert*, 509 U.S. at 590, 595, 113 S.Ct. 2786; *see also Amorgianos v. National Railroad Passenger Corp.*, 137 F.Supp.2d 147, 162 (E.D.N.Y.2001). In *Daubert*, the Supreme Court set out a list of non-exclusive factors the trial court may consider in determining whether an expert's reasoning or methodology is reliable: (1) whether the theory or technique on which the expert relies has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the theory or technique has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or method has been generally accepted by the scientific community. *See Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786.

■ The test of reliability, however, is a "flexible" one, and the four factors set forth in *Daubert* do not constitute a "definitive checklist or test." *See Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167 (quoting *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786).[1] Whether the *Daubert* factors are pertinent to assessing reliability in a particular case depends on "the nature of the issue, the expert's particular expertise, and the subject of his testimony," and "a trial court should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167. In short, "the gatekeeping inquiry must be 'tied to the facts' of a particular case," *Id.* (quoting *Daubert* 509 U.S. at 591, 113 S.Ct. 2786), and "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152, 119 S.Ct. 1167. No single factor is necessarily dispositive of the reliability of a particular expert's testimony and "[a] review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Advisory Committee Notes, 2000 Amendments, Fed. R.Evid. 702.

■ The trial court must not only determine whether the testimony is reliable; it must also determine whether an expert's testimony is "relevant to the task at hand," in other words, whether the expert's reasoning or methodology can be properly applied to the facts before the court. *See Daubert,* 509 U.S. at 592–93, 113 S.Ct. 2786; *Stagl v. Delta Air Lines, Inc.,* 117 F.3d 76, 81 (2d Cir.1997); *Koppell,* 97 F.Supp.2d at 480. In order to determine whether the expert's testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R.Evid. 702, the testimony must not only be reliable but must be relevant in that it "fits" the facts of the case. *Daubert,* 509 U.S. at 591–92, 113 S.Ct. 2786; *Koppell,* 97 F.Supp.2d at 480.

In short, the gatekeeping responsibility of the trial court is not to weigh the correctness of an expert's opinion, or to choose between conflicting opinions, or to analyze and study the science in question in order to reach its own conclusions from materials in the field. Ultimately, it is the role of the trial court as gatekeeper to

> ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Kumho Tire,* 526 U.S. at 152, 119 S.Ct. 1167.

### Discussion

Applying these principles here, and based significantly on Machnicki's testimo-

---

**1.** Courts both before and after *Daubert* have found other factors relevant in determining whether expert testimony is sufficiently reliable to be considered by the trier of fact, *see, e.g.,* Advisory Committee Notes, 2000 Amendments, Fed.R.Evid. 702 (collecting cases), such as whether the theory or method offered by the expert has been put to any non-judicial use, *see Cabrera v. Cordis Corp.,* 134 F.3d 1418, 1420–21 (9th Cir.1998); *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 n. 8 (3d Cir.1994), "or whether [the experts] have de- veloped their opinions expressly for the purpose of testifying." *Daubert v. Merrell Dow Phams., Inc.,* 43 F.3d 1311, 1317 (9th Cir. 1995) (*"Daubert II"*). Moreover, additional factors may be appropriate in a given case, and a district court enjoys the same "broad latitude" in deciding what are the "reasonable measures of reliability in a particular case" as it does in reaching its ultimate determination of reliability. *Kumho Tire,* 526 U.S. at 142, 153, 119 S.Ct. 1167.

ny during the July 16, 2001 hearing, the court concludes that Machnicki's proffered opinion testimony meets the threshold set by *Daubert* and *Kumho Tire.*

■ As a preliminary matter, the court finds no reason to doubt Machnicki's qualifications. Machnicki is the Director of Travelers' Loss Prevention and Engineering Laboratory, a position he has held since 1990. Machnicki has been involved in fire and explosion investigation since he was employed as a Chemist Consultant for Aetna Insurance in 1987. Machnicki is also a Certified Fire and Explosion Investigator and is currently a member of both the National Association of Fire Investigators and the National Fire Protection Association. Accordingly, GE's motion in limine to exclude Machnicki as unqualified to give expert testimony is denied and the court turns to the question of Machnicki's methodology.

Were the court to have considered only Machnicki's expert report, his deposition testimony and the parties' briefs, it likely would have reached a different result. Machnicki's three-page expert report of July 19, 1999 is woefully inadequate. For a case of this scope and magnitude involving twenty-three separate dryer fires, brought by a sophisticated insurer, one would expect much more of an in-depth, case-by-case analysis to be set forth. The report provides little more than a bare-bones analysis and a very general overview of Machnicki's investigation, results and conclusions, rather than a more thorough description of the data collected and Machnicki's origin-and-cause analysis of each of the dryer fires.

Given the shortcomings of Machnicki's report, it is not surprising that GE had to depose Machnicki at length in an attempt to discover the basis for his proffered opinion with respect to each fire. Moreover, the court's review of Machnicki's voluminous deposition transcripts—including the portions highlighted by Travelers—failed to disclose his methodology with any degree of specificity. *See, e.g.,* Deposition Transcript of John P. Machnicki dated Sept. 14, 1999 at 391 ("[Y]ou keep trying to drag in this concept of the scientific method as I understand it. I'm not suggesting that there's necessarily a step by step process that I have with that.").

■ In short, it is apparent that Machnicki has developed and articulated his opinion over time.[2] Although the court does not believe that GE was truly surprised by Machnicki's testimony at the July 16, 2001 *Daubert* hearing, it does appear that GE heard a focused and succinct statement of the basis and reasoning for Machnicki's opinion for the first time at that hearing. Although the court does not find that the expert disclosure technically violated Rule 26 of the Federal Rules of Civil Procedure, Machnicki's expert disclosure and much of his deposition testimony did not follow the spirit of that rule. The court, relying on its inherent authority, will address the appropriate sanction for that failure below.

The inadequacy of Machnicki's disclosure and the weaknesses evident in his deposition testimony, however, are not dispositive of the motion in limine. The court must determine whether the opinion that Machnicki more fully articulated during the July 16, 2001 *Daubert* hearing is ad-

**2.** For example, Machnicki's expert report opined that the lint accumulated behind the dryer drum is ignited from being in close proximity to the dryer's heating elements. Machnicki has since elaborated that, in addi-

tion to ignition from mere proximity to the heating elements, the lint accumulated behind the dryer drum may also ignite when some amount is dislodged and comes into direct contact with the dryer's heating elements.

missible at trial under Fed.R.Evid. 702 and the principles of *Daubert* and *Kumho Tire.* Simply put, Rule 702 and *Daubert* set standards for the admissibility of trial evidence, not requirements of pretrial procedure. If Machnicki has a relevant and reliable opinion to offer that will assist the trier of fact to determine the cause of the dryer fires at issue, that opinion should be admitted into evidence.

■ Based primarily upon Machnicki's July 16, 2001 testimony, and focusing solely on his principles and methodology, not on the conclusions they generate, the court finds that Machnicki's proffered opinion testimony meets the requirements of Rule 702 and *Daubert.* Although GE has a great deal of material for cross-examination, the court finds that Machnicki's proffered testimony is the product of reliable principles and methods. Machnicki's experience, knowledge and training, taken together with the process he described during the July 16, 2001 hearing of analyzing the burn patterns in each dryer and then ruling out potential alternative explanations, is sufficient to meet the *Daubert* threshold of admissibility. Importantly, although Machnicki did not test his theory experimentally, his theory is *capable* of being tested, so that GE's experts could employ testing to undercut it and, indeed, have engaged in such efforts.

Although Machnicki clearly had a different view of the authoritativeness of the National Fire Protection Association 921 Guide for Fire and Explosion Investigations ("NFPA 921") during his deposition than he did at the July 16, 2001 hearing, the court is convinced that the steps Machnicki took to develop his opinion were nevertheless *consistent* with the principles of NFPA 921, a peer reviewed and generally accepted standard in the fire investigation community. Moreover, although GE has raised some very strong points

about the way in which Machnicki conducted his investigation, the data he collected and the way it was analyzed—including the probative value of certain tests he performed *after* the issuance of his report—the court believes that those concerns are, under the circumstances of this case, more appropriately the subject of what will no doubt be a rigorous cross-examination. *See, e.g.,* Advisory Committee Notes, 2000 Amendments, Fed.R.Evid. 702 ("[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.") (quoting *United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi,* 80 F.3d 1074, 1078 (5th Cir.1996)). As the Court in *Daubert* stated: "Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 595, 113 S.Ct. 2786; *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 744 (3d Cir.1994) (proponents "do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of the evidence that their opinions are reliable.... The evidentiary requirement of reliability is lower than the merits standard of correctness."); *Ruiz–Troche v. Pepsi Cola,* 161 F.3d 77, 85 (1st Cir. 1998) ("*Daubert* neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance.").

■ In short, Machnicki's testimony at the *Daubert* hearing convinced the court that he did follow the scientific method and a reliable methodology; but, for whatever reason, did an exceptionally poor job articulating that methodology in either his expert report or his deposition testimony.

GE is understandably frustrated that: (1) the plaintiff issued a bare-bones, three-page expert report; (2) counsel had to take twelve days of depositions in an attempt to more fully understand Machnicki's proffered opinion; (3) the expert opinion has been developed and articulated over time; and (4) Machnicki clearly stated the basis and methodology for his opinion for the first time at the *Daubert* hearing.[3] Nevertheless, because Machnicki's opinion as articulated at the July 16, 2001 hearing is admissible under Rule 702 and *Daubert*, the appropriate remedy for Traveler's conduct—and the appropriate deterrent to such conduct in the future—is not exclusion of Machnicki's testimony, but sanctions based upon the court's inherent authority to control the conduct and fairness of the case.

In that regard, the court finds that Travelers' expert disclosure amounted to bad faith. As discussed during the *Daubert* hearing and as noted above, this is a substantial case, involving twenty-three separate dryer fires, brought by a sophisticated insurer. Whether the scope of Machnicki's expert disclosure was due to strategic motivations, unpreparedness or otherwise, a sophisticated litigant like the Travelers could not have believed in good faith that a three-page expert report would be adequate for a case of this scope and magnitude. Indeed, counsel for the Travelers conceded at the *Daubert* hearing that the court's criticism of the report were "well taken."

Moreover, as noted above, in light of Machnicki's disclosure, it is not surprising that GE had to depose Machnicki at length in an attempt to discover the basis for his proffered opinion with respect to each fire. Machnicki's deposition nevertheless failed to disclose his methodology with any degree of specificity and it was not until after GE filed a *Daubert* motion and the court held a hearing that GE heard a focused and succinct statement of the basis and reasoning for Machnicki's opinion.[4] Although the court cannot say that the manner in which Machnicki's opinion was articulated amounted to a technical violation of Rule 26, the court finds that the inadequacy of that disclosure nevertheless constituted bad faith on the part of Travelers for which sanctions are warrant-

---

3. The court does not believe that Machnicki's testimony "came as complete surprise to GE" or that Machnicki "unveiled what amounted to an entirely new methodology." *See* Defendant's Post–Hearing Submission at 1. Rather, GE simply heard a more focused and succinct statement of the basis and reasoning for Machnicki's opinion for the first time at the July 16, 2001 *Daubert* hearing. In any event, GE may not have found itself in this position had it moved to exclude Machnicki's expert report at or around the time it was issued in July 1999. Such a motion may have resulted in a revised expert report that was not only more detailed, but also may have obviated the need for such extensive deposition practice.

4. The court does not suggest that Travelers alone engaged in procedural gamesmanship. As noted above, GE could have moved to exclude Machnicki's report at or around the time it was disclosed, but did not. Although the court does not make such a finding, it appears that GE sought to capitalize on the manner in which Machnicki's opinion developed by holding off an earlier challenge in order to set up a *Daubert* motion. It also appears that, to some extent, counsel for GE may have unnecessarily contributed to the length of Machnicki's deposition, by insisting, for example, upon asking the same question for each of the twenty-three fires having already elicited an answer that Machnicki expressly stated applied to each case. *See, e.g.,* Travelers' Reply to Defendant's Post–Hearing Submission and Motion for Reconsideration re: Order Imposing Costs at 4 n. 3. The court therefore believes that the appropriate remedy for both parties' conduct is to allow GE to recover a portion of its costs and to permit GE to take up to two additional days of deposition testimony from Machnicki.

ed. *See, e.g., United States v. Seltzer*, 227 F.3d 36, 41–42 (2d Cir.2000) ("When a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in the actions that led to the lawsuit or conduct of the litigation, which actions are taken on behalf of a client, the district court mush make an explicit finding of bad faith.") (citation and internal quotation marks omitted); *Sassower v. Field*, 973 F.2d 75, 79–81 (2d Cir.1992) (affirming imposition of monetary sanctions under district court's "inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons"), *cert. denied*, 507 U.S. 1043, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993).

Accordingly, the court, relying on its inherent authority, orders Travelers to reimburse GE for one-third of its costs and expenses in taking the first twelve days of Machnicki's deposition.[5] The parties shall confer in an effort to agree upon the amount to be reimbursed. To the extent that agreement cannot be reached, GE shall submit a fee application on or before *August 15, 2001* and Traveler's response shall be filed on or before *September 5, 2001*. In addition, GE shall be permitted to take up to two more seven-hour days of deposition testimony from Machnicki, should it choose to do so.

■ Finally, as discussed on the record during the July 16, 2001 *Daubert* hearing, should GE promptly move for an order certifying the question of the admissibility of Machnicki's testimony for immediate appeal pursuant to 28 U.S.C. § 1292(b), the court would be inclined to grant that motion. The question of the admissibility of Machnicki's expert testimony [6] is likely a dispositive issue not only in this case, but also in *Travelers v. General Electric*, Civ. No. 99cv2437 (SRU). Moreover, this is a substantial case involving twenty-three separate counts arising from twenty-three separate dryer fires, each of which may need to be tried individually or in small groups of "bellweather" trials with the same expert testimony at issue. The related 1999 action similarly involves twenty-two separate counts arising from as many dryer fires and is predicated upon the same design defect theory. The court believes that allowing an immediate appeal is

---

**5.** In a post-hearing submission, Travelers has sought reconsideration of this sanction, which was announced at the conclusion of the *Daubert* hearing. Reconsideration is denied. Travelers fails to meet the difficult standard governing motions for reconsideration. *See* L.R.Civ.P. 9(e) (D.Conn.); *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 256–57 (2d Cir.1995); *City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir.1991); *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983); *Doe v. New York City Dep't of Social Services*, 709 F.2d 782, 789 (2d Cir.), *cert. denied sub nom Catholic Home Bureau v. Doe*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Adams v. United States*, 686 F.Supp. 417, 418 (S.D.N.Y. 1988); *Gold v. Dalkon Shield Claimants Trust*, No. 5–82–CV–282(EBB), 1998 WL 422900 at *2 (D.Conn.1998); *Oxford House, Inc. v. City of Albany*, 155 F.R.D. 409, 410 (N.D.N.Y. 1994); *Wilson v. Consolidated Rail Corp.*, 815 F.Supp. 585, 586 (N.D.N.Y.1993); *Schonberger v. Serchuk*, 742 F.Supp. 108, 119 (S.D.N.Y. 1990).

**6.** The court is in receipt of GE's post-hearing submission requesting that the court's ruling on the motion in limine be without prejudice to a future motion by GE to preclude Machnicki's opinion as articulated at the July 16, 2001 hearing. Although the court is mindful of GE's concerns, because the proponent has the burden of proof regarding admissibility and because the court believes that Machnicki's opinion as articulated at the *Daubert* hearing meets that burden, the court is not inclined to grant the requested relief. Machnicki's opinion as it now stands is either admissible or it is not—and the court has determined that Machnicki's opinion meets the *Daubert* standards. Accordingly, any further review of that decision should be done by way of interlocutory appeal.

a more efficient use of judicial resources than undertaking numerous trials before the question of the admissibility of Machnicki's expert testimony can be taken up on appeal from a final judgment. Accordingly, should GE choose to seek an order from the court certifying the matter for immediate appeal pursuant to 28 U.S.C. § 1292(b), it shall make a motion requesting that relief within two weeks of the date of this order. Once granted, GE would have ten days from the date of this court's order certifying the issue in which to make its application to the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 1292(b).[7]

*Conclusion*

Accordingly, for the reasons set forth on the record at the conclusion of the July 16, 2001 *Daubert* hearing and for the foregoing reasons, GE's motion in limine to preclude the proffered testimony of John P. Machnicki (**doc.# 90**) is DENIED.

It is so ordered.

7. As noted during the July 16, 2001 hearing, the district court's certification of the issue is not dispositive. The Court of Appeals for the Second Circuit, in its discretion, would thereafter decide whether to accept the issue for immediate appeal. *See* 28 U.S.C. § 1292(b).